IN THE TEXAS COURT OF CRIMINAL APPEALS

82,109-02

| Steven Ray Peace | § | WRIT 82, 109-01 |
| Ex Parte, | § | Cause No. 967801-A |
| Petitioner | § | 338th D. C. Harris County |

RECEIVED IN
COURT OF CRIMINAL APPEALS
FEB 12 2015

MOTION FOR LEAVE TO FILE SUPPLEMENTAL AFFIDAVIT

COMES NOW, Steven Ray Peace, petitioner in the above styled cause to ask leave to file a Supplemental Affidavit to be considered by the TEXAS COURT OF CRIMINAL APPEALS in it's review of petitioner's § 11.07 writ of habeas corpus.

Petitioner avers this affidavit is necessary due to the fraudulent misrepresentation he received from his hired habeas attorney, Roy G. Romo. Romo delayed petitioner's habeas corpus with frivolous filings for over seven years, and failed to include several points of error crucial to this petitioner's actual innocence. Romo instead argued exclusively ineffective assistance of trial counsel errors, while undertaking no investigative effort to present new evidence issues or physical evidence reviews.

Peace requests the TEXAS COURT OF CRIMINAL APPEALS review his sworn Affidavit and consider that his over seven year delay in habeas review ended in the Trial Court not reviewing defendant Peace's Findings of Facts And Conclusions of Law therefore adopting the State's fact findings without benefit of mitigating factors. Even under Trial Court Order, Romo failed to produce required filings for the Court to have time to consider.

Petitioner prays the TEXAS COURT OF CRIMINAL APPEALS will evaluate the facts revealed in his affidavit, and make any order necessary for the interest of justice.

GRANTED_____ DATE_____ DENIED_____ DATE_____

INMATE DECLARATION

I, Steven Ray Peace, do hereby swear under penalty of perjury that the foregoing facts and statements are true and correct

Steven Ray Peace
TDCJ ID 1245847
Hughes Unit
RT 2 Box 44oo
Gatesville, TX 76597

DATE February 4, 2015

§
§
§
§
§

## AFFIDAVIT

I, Steven Ray Peace, petitioner, provide this affidavit in the matter of Writ No. 82, 109-01, case number 4: 14-cv-00643, Steven Ray Peace v. William Stephens, cause No. 967801-A, to exemplify the cummulative affects of trial counsels' ineffective assistance, and the subsequent fraudulent misrepresentation of habeas counsel.

During my March, 2004 trial, Matthew Clemens testified as a former Harris County Sherriff's Department ballistics examiner for the State. Clemens testified that he examined five (5) 9mm shell casings that were collected in 2002 by detectives Wedgeworth and Fikaris from a seven acre piece of farmland in Burton, Texas that I had rented from September, 1987 to March, 1988. Also collected by Wedgeworth and Fikaris on that land were a number of other shell casings of various calibers that were deposited by me during my residence there. But oddly, these other shell casings were too deteriorated to analyze due to exposure to the elements for fourteen years. The five 9mm's, however, were in pristine condition and Clemens determined that they matched the casings from the murder scene. Over the course of years several owners and renters had resided on that property. The most recent had even re-landscaped the entire front quarter of the land around the house, including the area where said 9mm casings were found. Examination of the County Land Office will show that Burton (Washington County) has some of the most acidic and corrossive soil in all of Texas. Fourteen year old casings in pristine condition are highly unlikely.

Trial counsels Parnham and McWilliams did not challenge the lack of corrossion on the five 9mm's in spite of their being allegedly placed there by me fourteen years earlier. Nor was there any analysis of the soil, fertilizers, rainfall records, or othere elemental contributors to the larger group of deteriorated casings from the same period. Also unchallenged was the total absence of Chain of Custody, location, time, depth, or any documentation depicting exactly where these five 9mm's came from on that land. In fact, the five 9mm's were marked with "Q" identifiers, which was consistent with ballistics recovered from Campbells' Muskogee, Oklahoma residence instead of the "B" identifiers consistent with the remainder of the Burton casings that were too deteriorated to analyze.

When I asked Parnham and McWilliams about the lack of challenges to this evidence and testimony, Parnham stated, "It is not a threat to us because the last owner of the alleged murder weapon, Chip Campbell, reported it stolen and the gun was not in

evidence. Parnham and McWilliams refused my questions about hiring a metalurgist or soil expert. Counsels' failures to challenge this evidence when it clearly provided opportunity to prove that all shell casings, including these five 9mm's, exposed to the same elements and conditions for fourteen years should **all** be in the same deteriorated condition was clearly ineffective assistance of counsel. More importantly, that these five 9mm's were in pristine condition demonstrates that they were <u>NOT</u> fourteen years old and therefore could not have been placed there by me.

During Clemens' testimony, Prosecutor Denise Nassar picked up one of the five 9mm's, looking at the base of the casing she exhorted, "1987!", attempting to qualify it as from the period I lived in Burton, TX. There are no dates on shell casings. Her act of falsifying evidence was not objected to by counsel, nor was a limiting instruction requested. This was ineffective assistance of counsel.

During the cross-examination of my ex-wife, Brynda Abdullah, Parnham was going to impeach her with a recorded statement she had made to the Defense investigator that was inconsistent with what she had stated to Wedgeworth, Kikaris, and Ranger Oldham regarding the pressure she was put under to testify against me and threats they had made to arrest her son, Wayne Cox if she didn't, and whether or not Wayne had ever lived with Chip Campbell. Parnham asked the bailiff for the tapeplayer, and Parnham set about searching his coat pockets for the audio cassette. Parnham LOST the audio tape in Court and could not impeach Abdullah with her biases against me or motives to protect her son. Parnham's failure to secure and maintain this vital material is certainly ineffective assistance of counsel.

Prior to trial, Parnham informed me that the shell casings from the murder scene had somehow been lost for over ten years somewhere between the H.P.D. Crime Lab and the Sherriff's Department, and had only recently been located (2003). Parnham did not challenge the breached chain of custody or the validity of the lost casings. This was ineffective assistance of counsel.

I asked habeas counsel, Roy G. Romo to pursue the corrossion and soil analysis as part of my writ of habeas corpus. Initially, he investigated these arguments, even visiting the Burton location himself at one point. He also secured a court order from 338th District Judge Brock Thomas to examine ballistics in January, 2008 as part of my writ of habeas corpus, but he never followed up on it. When my wife and I questioned Romo about progress a few months later, he demanded to be paid an additional $20,000.00 in spite of already promising to develop my writ of habeas corpus for the $60,000.00 he had already been paid. Romo was effectively holdding my writ hostage in lieu of more money in spite of his previous promises to me and my wife.

Mr. Romo's actions were a fraudulent misrepresentation by habeas corpus counsel.

At trial, the State was allowed to use an alleged 1989 statement of my brother, David Peace, who was out of the country during the trial. Ranger Oldham implied that my brother implicated me in that statement in spite of the hearsay rule. I spoke to my brother on the telephone in December, 2003, prior to trial. He emphatically stated that he in no way implicated me in this, or any other crime. On December 30, 2013, I received notice from a family member that my brother was back in the United States (Houston, TX). I immediately sent word to Romo via U.S. Certified Return Receipt mail that my brother was in Houston and to please locate him and secure an affidavit refuting Oldham's assertions for use in a supplement to my writ of habeas corpus. Romo refused to act on my urgent request in spite of the significant value the affidavit would bring to my habeas corpus. His pandemic delays and repeated refusals to comply with client instructions compelled me to file a State Bar Grievance against Romo, No. 2014011851 (March,2014). My brother is now back overseas and unavailable as reported to me by family members. Mr. Romo's fraudulent misrepresentation as habeas counsel only exacerbates that of ineffective trial counsel.

As part of my motion and hearing for a new trial counsel provided affidavits that addressed their poor trial strategy. While Parnham did not completely admit fault, McWilliams provided an affidavit dated May 13, 2004, where he states, "I should have objected to that testimony and my failure to object was not part of any trial stategy", in regard to Oldham's testimony about my brother's alleged statement. McWilliams also states, "...had I properly objected and had the jury been properly instructed,...I am confident that the jury results would have been different." In comparison to Parnhams and McWilliams'affidavits provided in October, 2011, and the most recent editions filed December 10, 2014, they read like night and day. Romo did not develop this great discrepancy in counsels' statements regarding the failure of their trial strategy. Romo should have requested an evidentiary hearing and subpoena counsel to explain why early on they admit fault but later refuse to. Romo assured me that a "paper hearing" with affidavits only was sufficient. To abandon such a compelling counsel error admitted to in a sworn statement can only be described as fraudulent habeas representation.

Additionally, I sent Mr. Romo a cease and desist letter that he received via U.S. Certified Return Receipt Mail on August 11, 2014 due to his total lack of due-diligence as habeas counsel. Mr. Romo promised as far back as several years ago and most recently as April, 2014, and September, 2014 to file Findings of Facts And Conclusions of Law for my habeas corpus. What he filed on January 9, 2015 as

Findings of Facts And Conclusions of Law and supporting memorandum was done with-

out my knowledge or authorization given the cease and desist letter from August 11, 2014. He was no longer my habeas counsel. Filing these documents on the very last day of the Order from the Court of Criminal Appeals was too little, too late. The 338th District Judge in no way considered them and summarily adopted the States' erroneous fact findings. The cease and desist order precludes the validity of any documents Romo may have filed. This is truly fraudulent representation of habeas corpus counsel. My writ of habeas corpus had been pending, languishing for seven years in the 338th District Court. Mr. Romo produced delay after delay and ignored client instructions repeatedly. That is what compelled me to file the application for writ of mandamus with the Court of Criminal Appeals. Mr. Romo's total work in my habeas corpus represents fraud of the Court.

## INMATE DECLARATION

I, Steven Ray Peace, do hereby swear under penalty of perjury that the foregoing facts and statements are true and correct.

On this date February 4, 2015

Steven Ray Peace
TDCJ ID 1245847
RT 2 Box 4400
Hughes Unit
Gatesville, TX 76597

## NO. 967801-A

| | | |
|---|---|---|
| EX PARTE | § | IN THE DISTRICT COURT |
| | § | |
| STEVEN RAY PEACE | § | HARRIS COUNTY, TEXAS |
| | § | |
| | § | 338TH JUDICIAL DISTRICT |

## ORDER

On this day came to be heard Applicant's Motion to Permit Examination of Trial Exhibits (Ballistics Evidence) in the Custody of the Harris County Sheriff's Office and, after considering same and hearing arguments of counsel, it is of the opinion that said Motion should be GRANTED.

IT IS THEREFORE ORDERED that—

Applicant's counsel, Roy G. Romo, shall designate an expert or experts to examine the ballistics evidence admitted at trial in *State of Texas v. Steven Ray Peace*, No. 967801, including State's Exhibits Nos. State's Exhibits Nos. 29 through 42; 126 through 132; and 140 through 156.

Applicant's counsel shall give notice of such designation to the Harris County Assistant District Attorney in charge of this case.

If said Assistant District Attorney does not object to the expert or experts so designated, he/she shall notify the proper custodian of the Harris County Sheriff's Office to deliver the trial exhibits (ballistics evidence) to said expert or experts for examination.

After examination is completed, the designated expert or experts shall return said trial exhibits (ballistic evidence) to the proper custodian of the Harris County Sherriff's Office.

IT IS FURTHER ORDERED that—

Applicant's counsel shall provide a copy of the final report generated by the designated experts to the Assistant District Attorney in charge of this case.

1

Applicant shall pay for all cost and expenses associated with the examination conducted by said experts.

All experts designated by Applicant's counsel will be considered an agent of and employed by Applicant and nothing herein shall be construed to constitute a waiver of any privileges with respect to said experts, including the attorney-client and work-product privileges.

SIGNED AND ENTERED on this _____ day of January, 2008.

                                                         _____
                                                          JUDGE PRESIDING

ENTRY REQUESTED:

_____
**ROY G. ROMO**
State Bar No. 17225850

MELLIE ESPERSON BUILDING
815 Walker, Suite 250
Houston, Texas 77002
(713) 580-6555 (telephone)
(713) 580-6556 (facsimile)

Attorney for Applicant:
**STEVEN RAY PEACE**

# AFFIDAVIT

THE STATE OF TEXAS        §
                                  §

COUNTY OF HARRIS        §

       BEFORE ME, the undersigned authority, on this day personally appeared EDWIN DEE McWILLIAMS, who, after being by me first duly sworn, on his oath deposed and said:

       My name is Edwin Dee McWilliams. I am an attorney licensed by the Supreme Court of Texas since 2000, primarily focusing my practice in criminal law in both State and Federal courts.

       In January 2003 I worked for George Parnham at the law firm of Parnham & Associates and undertook to represent Steven Peace in the case styled State of Texas v. Steven Ray Peace, Cause No. 967801 in the 338th District Court of Harris County, Texas.

       Prior to trial I was informed that Texas Ranger Stanley Oldham had interviewed David Peace, Defendant's brother, who allegedly had made incriminating statements regarding Defendant. I was also informed that David Peace was unavailable to testify and was living in Russia. During the testimony of Ranger Oldham, the State elicited inadmissible hearsay. While I objected to some of this testimony, I failed to properly object to all of it. Specifically, on at least one occasion, the State was able to elicit the contents of David Peace's remarks to Ranger Oldham by inferring that, as a result of the statement, the investigation focused on Steven Peace. I should have objected to that testimony, and my failure to object was not part of any trial strategy.

       During cross-examination of the Defendant, the State improperly elicited the same hearsay statements by forcing Defendant to deny that he made such statements to his brother. The impact of these cross-examination questions was the implication that the prior inadmissible statements by David Peace were made and were true. While I objected to some of the statements, I failed to object to all of them and, more importantly, failed to request a limiting instruction from the court, both at the time the testimony was elicited and at the close of the evidence, to consider Defendant's statements in response to such questions for impeachment purposes only and not as substantive evidence. The improper cross-examination of Defendant became a crucial portion of the case and had I properly objected and

had the jury been properly instructed to consider the Defendant's responses for a limited purpose, I am confident that the jury results would have been different.

Finally, there were potential punishment witnesses made available to us prior to trial. It is my belief those witnesses would have been helpful to Defendant's case. However, given the intensity of our focus on the guilt-innocence phase of the trial, and other factors, it is my belief that the punishment evidence was not ready for presentation to the jury.

_____
Edwin Dee McWilliams

SUBSCRIBED AND SWORN TO before me on May 13th , 2004.

_____
Notary Public in and for The State of Texas

WINIFRED M. MCNAMARA-HOWARD
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MAY 12, 2008